1

2

3

4

5

6

7

8                  UNITED STATES DISTRICT COURT

9                 CENTRAL DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| THOMAS A. MORIN, RENE LONGORIA, NICOLAS MEREZKO on behalf of themselves and all others similarly situated, | Case No.  2:23-cv-00216-WLH-SK |
| Plaintiffs, | **ORDER RE MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** **[36]** |
| v. | |
| DEALERS' CHOICE TRUCKAWAY SYSTEM, INC. dba TRUCKMOVERS, a Kansas corporation, and DOES 1-20, inclusive, | |
| Defendants. | |

Plaintiffs Rene Longoria and Nicolas Merezko ("Plaintiffs") filed an unopposed Motion for Preliminary Approval of a Class Action Settlement reached with Defendant Dealers' Choice Truckaway System, Inc. ("Defendant"). ("Motion," Docket No. 36). Defendant, which does business as Truckmovers, is the sole named defendant in the suit. The Court, having considered all the papers filed and evidence submitted in conjunction with the Motion, **GRANTS** Plaintiff's Motion as follows:

- The proposed settlement ("Settlement") as set forth in the Class Action Settlement Agreement (the "Agreement")[1] is preliminarily approved because it is fair, reasonable, and adequate, although the Court expects counsel to address issues discussed below in greater depth at the final approval hearing;

- The proposed settlement class ("Settlement Class," *see* Agreement, Docket No. 36-2 at Exh. B § I.JJ)) is preliminarily and conditionally approved for settlement purposes only because it satisfies the requirements of Federal Rules of Civil Procedure 23(a) and (b)(3);

- Plaintiffs Rene Longoria and Nicolas Merezko are appointed as class representatives;

- Plaintiffs' counsel, Sam Kim and Yoonis Han of Verum Law Group, APC, are appointed as class counsel;

- Phoenix Class Action Administration Solutions is appointed to act as the settlement administrator in accordance with the Agreement's terms; and

- The Court approves the proposed class notice and the Court directs the distribution of the notice in accordance with the schedule and procedures set forth in the Agreement;

The final approval hearing will be held on May 24, 2024, at 1:30 p.m. (the "Final Approval Hearing") in Courtroom 9B of the First Street Courthouse of the United States District Court for the Central District of California to determine whether the Court should give final approval to the Settlement as fair, reasonable, and adequate to the Class. At this final hearing, the Court will hear all evidence and argument necessary to evaluate the Settlement and will also consider motions for approval of attorneys' fees and costs and for approval of the Class Representative Service Payment.[2] Class Members and their counsel may support or oppose the

---

[1] Unless specifically defined otherwise, this Order incorporates the defined terms from the Agreement. (Agreement, Docket No. 36-2 at Exh. B)

[2] The Plaintiffs are directed to file these motions with sufficient time to be heard on

2

1    Settlement and the motions for an award of attorneys' fees, costs and the Class

2    Representative Service Payment, if they so desire, as set forth in the Class Notice.

3    **I.    BACKGROUND**

4        **A.    <u>Procedural History</u>**

5        In May 2018, the original plaintiff in this action, Thomas Morin, filed a

6    proposed class action in Los Angeles Superior Court alleging various violations of

7    California's labor code and unfair competition law.[3] (Not. of Removal, Docket No. 1

8    at 1−2).  In August 2018, Morin filed a First Amended Complaint, which added a

9    cause of action for penalties under the Private Attorneys General Act ("PAGA," Cal.

10    Labor Code § 2699, *et seq.*).  In November 2019, Morin filed a Second Amended

11    Complaint, which voluntary dismissed several claims[4] and amended the class

12    definition to clarify that Morin sought meal and rest period penalties only for the

13    period after December 28, 2018.

14        In March 2020, the parties stipulated to stay the case pending resolution of four

15    pending California Supreme Court and Ninth Circuit decisions that bore on the issues

16    in the case.  (Not. of Removal, Docket No. 1 at 3).  Once all pending appellate

17    decisions were resolved, in July 2022, the Los Angeles Superior Court lifted the stay

18    of litigation and extended the deadline to try the case to September 2024.  (*Id.*).  In

19    December 2022, Morin filed a Third Amended Complaint, which added two named

20    plaintiffs, Rene Longoria and Nicolas Merezko, and dismissed the PAGA claim.  (*Id.*

21    

22    ──────────────
May 24, 2024.

23    [3] Specifically, the Complaint alleged that Defendant (1) willfully misclassified
employees; (2) failed to reimburse business expenses; (3) failed to make payment in

24    negotiable instrument; (4) unlawfully deducted from wages; (5) failed to provide off-
duty meal periods; (6) failed to provide off-duty rest periods; (7) failed to pay

25    minimum wages; (8) failed to furnish accurate wage statements; (9) owed waiting
time penalties; and (10) violated California's Unfair Competition Law.  (Not. of

26    Removal, Docket No. 1 at 2).

27    [4] The Second Amended Complaint dropped the willful misclassification claim, the
failure to make payment in negotiable instrument claim, and the unlawful deduction of

28    wages claim.  (Not. of Removal, Docket No. 1 at 2).

at 3−4).  Morin passed away, (*id.* at 4), and the Court dismissed Morin from the action with prejudice.  (Order, Docket No. 35 at 2).

Defendant removed the case to federal court in January 2023.  (*Id.*).  In April 2023, Plaintiffs filed the Fourth Amended Complaint—the operative complaint— which dismissed the meal and rest period claims and added a PAGA claim on behalf of Plaintiff Longoria.  (Fourth Am. Compl., Docket No. 23; Kim Decl., Docket No. 36-2 ¶ 14).  The claims in the Fourth Amended Complaint are: (1) failure to reimburse business expenses (Cal. Labor Code § 2802); (2) failure to pay minimum wage (*id.* §§ 1182.11, 1194); (3) failure to furnish accurate wage statements (*id.* §§ 226, 226.3); (4) waiting time penalties (*id.* §§ 201, 202, 203); (5) violation of unfair competition law (Cal. Bus. & Prof. Code § 17200, *et seq.*); and (6) violation of PAGA (Cal. Labor Code § 2699, *et seq.*).  (Fourth Am. Compl., Docket No. 23 at 1).  Defendant answered.  (Answer, Docket No. 24).

Thereafter, the parties filed a notice of settlement in principle.  (Docket No. 29). Plaintiffs filed the present, unopposed Motion for Preliminary Approval of Class Action Settlement.  (Docket No. 26).  Defendant also filed an attorney declaration averring that Defendant met the notice requirement of 28 U.S.C. § 1715(b).

## B.  **Factual Background**

### i.  *The Parties*

Plaintiff Rene Longoria was a truck driver for Defendant from "approximately 2016-2018 and 2020 through October 2022" who performed work in Los Angeles, Sacramento and Fontana among other locations.  (Fourth Am. Compl., Docket No. 23 ¶ 5).  Plaintiff Nicolas Merezko was a truck driver for Defendant from "approximately May 2019 to October 2021" and also worked in Los Angeles, Sacramento, and Fontana, *inter alia*.  (*Id.* ¶ 6).  Defendant Truckmovers transports trucks for truck dealers and manufacturers, in addition to performing inventory management and logistics.  (*Id.* ¶ 12).

///

4

1

      *ii.*    *Underlying Allegations*

2

      Defendant employed truck drivers in California to "transport and deliver

3 trucks," all of whom Defendant uniformly classified as independent contractors.

4 (*Id.* ¶¶ 14, 23).  Plaintiffs allege that Defendant "retained and exercised significant

5 control" over the truck drivers, such that they were Defendant's "employees, not

6 independent contractors." (*Id.* ¶ 17; *see also id.* ¶ 18 ("At all relevant times,

7 Defendants retained exclusive control over the day-to-day work performed by the

8 Truck Drivers.  The progress of [their] work is monitored by dispatchers…")).  During

9 the liability period, Plaintiffs claim, Defendant required truck drivers to maintain

10 certain types of insurance, and to pay for fuel, overnight lodging, cell phones, and data

11 without reimbursement.  (*Id.* ¶¶ 22, 24).  Plaintiffs also allege Defendant made

12 unlawful wage deductions and failed to provide a negotiable paycheck.  (*Id.*

13 ¶¶ 24−25).  Plaintiffs claim that Defendant also failed to pay minimum wage

14 compensation and to itemize the total hours worked on wage statements.  (*Id.*

15 ¶¶ 26−27).

16

      *iii.*    *Mediation*

17

      Prior to mediation, the parties engaged in discovery including written discovery

18 into prospective class members, pay records, and Defendant's policy and practices and

19 the exchange of documents, among other things.  (Mot., Docket No. 36 at 4−5).  On

20 July 18, 2023, the Parties attended mediation with Lynn Frank, Esq., a "well-respected

21 mediator for wage and hour claims."  (Kim Decl., Docket No. 36-2 ¶ 17, 24).  The

22 mediation "was adversarial," "lasted a full day," and resulted in agreement in

23 principle.  (*Id.* ¶ 24).  After several months and "numerous disputes," the parties

24 agreed on a long-form Settlement Agreement.  (*Id.* ¶ 18).

25

      *iv.*  *Settlement Terms*

26

      The material terms of the parties' proposed Settlement Agreement are as

27 follows:

28

- Proposed Settlement Class:  The proposed Settlement Class consists of "all truck drivers classified as independent contractors who signed an independent contractor service agreement and who performed services for Defendant in the State of California during the Class Period," May 23, 2014, through the Preliminary Approval Date.  (Proposed Order, Docket No. 36-1 ¶ 3; *see also* Kim Decl., Docket No. 36-2 at Exh. B, I.G, JJ (Agreement defining Settlement Class)).

- PAGA Group Members:  The Agreement also defines PAGA Group Members to mean "all truck drivers classified as independent contractors who signed an independent contractor service agreement and who performed services for Defendant in the State of California during the PAGA Period," December 1, 2021, through the Preliminary Approval Date.  (Proposed Order, Docket No. 36-1 ¶ 4; *see also* Kim Decl., Docket No. 36-2 at Exh. B, I.X, AA (Agreement defining PAGA Group)).

- Payment Terms:  Defendant is to pay $1,100,000 as the Gross Settlement Amount to fund the Settlement.  (Mot., Docket No. 36 at 1).  Settlement Class Members—at least 3,159 individuals—will receive a pro rata share of the Gross Settlement Amount (less costs described in the following sentence) according to "the number of compensable worksheets for each Settlement Class Member during the Class Period**...**" (*Id.* at 1−2).  The costs to be deducted from the Gross Settlement amount, resulting in the Net Settlement amount, are: attorneys' fees, reimbursement for costs and expenses, service awards, settlement administrative costs, and payment to the California Labor and Workforce Development Agency ("LWDA") pursuant to PAGA.  (*Id.* at 2). The Plaintiffs estimate that the Net Settlement Amount to be distributed to class members will be approximately $658,500, for an average recovery of just over $208.  (*Id.* at 9) (citing Kim Decl., Docket No. 36-2 ¶ 23).

6

- Attorneys' Fees, Costs, and Service Awards:  Plaintiffs' counsel will receive an attorneys' fees award not to exceed 30% of the Gross Settlement amount ($330,000) and reimbursement for costs and expenses in an amount to be determined by the Court.  (*Id.*).  The service awards to the representative Plaintiffs shall not exceed $10,000 each.  (*Id.*).

- PAGA Payment:  The PAGA payment is $50,000 allocated to penalties under the PAGA.  (*Id.* at 7).  75% of the PAGA Payment, which is $37,500, shall be paid by the settlement administrator to the California Labor and Workforce Development Agency, and the remaining 25% ($12,500) shall be payable to each PAGA Group Member on a pro rata basis.  (*Id.*).

- Settlement Administration Costs:  The settlement administrator, Phoenix Settlement Administrators, shall be paid not more than $35,000 for administering the Settlement.  (*Id.*).

- Notice to Settlement Class:  The Settlement Administrator will use the United States Postal Service National Change of Address List to verify the accuracy of all addresses before the initial mailing date of the notice packet.  (*Id.* at 23).  "For returned envelopes, the Settlement Administrator will perform a routine skip-trace procedure to obtain a current address and promptly re-mail, by First Class U.S. Mail, the Class Notice with a new Response Period deadline."  (*Id.*).  "Settlement Class Members will have 45 days from the date the Settlement Administrator mails the Class Notice to request exclusion or object to the Settlement."  (*Id.*).

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 23(e) requires judicial review and approval of any class settlement.  "Preliminary approval and conditional certification are the first stage of the approval process."  *Grady v. RCM Techs., Inc.*, No. 5:22-CV-00842-JLS-SHK, 2023 WL 3327093, at *2 (C.D. Cal. May 2, 2023).  To preliminarily approve a class action settlement, the Court must determine whether a proposed settlement is

fair, reasonable, and adequate.  Fed. R. Civ. P. 23(e)(2); *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003).  Courts "generally must weigh" the following non-exhaustive list of factors:[5] the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members of the proposed settlement.  *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (citing *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)).  Additionally, because there is a "greater potential for a breach of fiduciary duty" prior to formal class certification, *id.*, district courts must check for the following signs of collusion: "'(1) when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded[;]'" (2) "'when the parties negotiate a clear sailing arrangement providing for the payment of attorneys' fees separate and apart from the class funds[;]'" or  (3) "'when the parties arrange for fees not awarded to revert to defendants rather than added to the class fund[.]'"  *Bautista v. Harvest Mgmt Sub LLC*, No. CV 12-10004 FMO (CWx), 2014 WL 12579822, at *6 (C.D. Cal. July 14, 2014) (quoting *In re Bluetooth*, 654 F.3d at 947) (cleaned up).

---

[5] "In December 2018, Congress and the Supreme Court amended Rule 23(e) to set forth specific factors to consider in determining whether a settlement is 'fair, reasonable, and adequate'…" *Briseño*, 998 F.3d at 1023−24 (quoting Fed. R. Civ. P. 23(e)).  "The advisory committee notes to the 2018 amendments indicate that the four new Rule 23 factors were not intended to displace [judicially developed] factors, but to focus courts on the 'core concerns of procedure and substance.'" *Soler v. Fresh Direct, LLC*, No. 20 Civ. 3431 (AT), 2023 WL 2492977, at *2 n.3 (S.D.N.Y. Mar. 14, 2023) (quoting Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment). The Ninth Circuit has held that the new factors require, at the very least, that district courts "examine whether the attorneys' fees arrangement shortchanges the class." *Briseño*, 998 F.3d at 1024 (quoting Fed. R. Civ. P. 23(e)(2)(c)(iii)).  The Court accordingly considers the *Churchill* factors, the *Bluetooth* factors, and the Rule 23(e) factors herein.

1    Because some factors cannot be fully assessed at this preliminary approval

2    stage, a full fairness analysis is unnecessary, and the Court need only "evaluate the

3    terms of the settlement to determine whether they are within a range of possible

4    judicial approval." *Wright v. Linkus Enters., Inc.*, 259 F.R.D. 468, 472 (E.D. Cal.

5    2009). "[T]he court's intrusion upon what is otherwise a private consensual agreement

6    negotiated between the parties to a lawsuit must be limited to the extent necessary to

7    reach a reasoned judgment that the agreement is not the product of fraud or

8    overreaching by, or collusion between, the negotiating parties, and that the settlement,

9    taken as a whole, is fair, reasonable and adequate to all concerned." *Hanlon v.

10    Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998), *overruled on other grounds by

11    Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).

12    Lastly, where a class has yet to be certified the Court must conditionally certify

13    a class for purposes of settlement by determining if the proposed class satisfies the

14    requirements of Rule 23(a) and one of the three categories of Rule 23(b). *Amchem

15    Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997).

16    **III.    DISCUSSION**

17    For the reasons set forth below, the Court preliminarily approves the proposed

18    Settlement, certifies the Settlement Class, and approves the Settlement's notice and

19    settlement administration procedures.

20    **A.    Approval of Proposed Settlement**

21    The Court finds that the proposed settlement is likely to be approved as fair,

22    reasonable, and adequate for the reasons discussed in the Motion and set forth below.

23    *i.    Adequacy and Experience of Counsel*

24    Proposed class counsel, Verum Law Group, APC, is experienced class counsel

25    with prior experience representing plaintiffs in complex class actions in both state and

26    federal courts, including wage and hour law disputes.  (Kim Decl., Docket No. 36-2

27    ¶¶ 5−8).  The settlement in this case is the culmination of class counsel's work since

28    2018, including multiple amended complaints, written discovery, interviews with

1  class members, document exchanges, and a mediation, among other things.  (*Id.*

2  ¶¶ 9−18).  The Court finds that the class counsel has adequately represented Plaintiffs

3  and the putative class, such that this factor weighs in favor of preliminary approval.

4       *ii.  Non-Collusive Arms' Length Settlement Following Discovery*

5    The settlement negotiations and Agreement also appear to be the result of arms-

6  length negotiation, which weighs in favor of preliminary approval.  The parties

7  engaged mediator Lynn Frank, Esq., a "well-respected mediator for wage and hour

8  claims."  (Kim Decl., Docket No. 36-2 ¶ 17, 24).  Enlistment of "'a prominent

9  mediator with a specialty in [the litigation subject matter]' to assist the negotiation of

10  their settlement agreement" is an indicator of non-collusiveness.  *See, e.g.*, *Alberto v.*

11  *GMRI, Inc.*, 252 F.R.D. 652, 666–67 (E.D. Cal. 2008) (*citing Parker v. Foster*, No.

12  05–0748, 2006 WL 2085152, at *1 (E.D. Cal. July 26, 2006)).  The mediation was

13  also "adversarial," "lasted a full day," and resulted in agreement in principle.  (Kim

14  Decl., Docket No. 36-2 ¶ 24).  Moreover, the parties had to resolve "numerous

15  disputes" before agreeing on the longform Agreement.  (*Id.* ¶ 18).

16    The discovery record also demonstrates that the parties "thoroughly

17  investigated and considered their own and the opposing party's positions."  *Spann v.*

18  *J.C. Penney Corp.*, 314 F.R.D. 312, 324 (C.D. Cal. 2016).  Plaintiffs sought and

19  obtained information about prospective class members, their time and pay records,

20  Defendant's policies and practices, driver log data, compensation records, and more.

21  (Mot., Docket No. 36 at 4−5).  In light of this record, the Court is satisfied at this

22  juncture that the Agreement was the product of "serious, informed, non-collusive

23  negotiations."  *See Spann*, 314 F.R.D. at 319 (explaining that the negotiations there

24  were "hard fought and contentiously litigated…").

25       *iii. Strength of Case, Risk, and Amount Offered in Settlement*

26    The proposed relief appears to be adequate in that it is reasonable and fair to

27  class members.  In general, a trial presents a serious risk due to the uncertainty of the

28  outcome and the expensive cost of litigation.  "Even a fractional recovery of the

10

possible maximum recovery amount may be fair and adequate in light of the uncertainties of trial and difficulties in proving the case." *Millan v. Cascade Water Servs., Inc.*, 310 F.R.D. 593, 611 (E.D. Cal. 2015).

Here, Plaintiffs estimate that the total realistic exposure if Plaintiffs succeeded on all claims at trial would be $2,969,372.99.  (Kim Decl., Docket No. 36-2 ¶ 31). Accordingly, the gross settlement amount of $1,100,000 represents approximately 37% of Plaintiffs' reasonably forecasted recovery for all claims.  Given the inherent risk associated with attempting to certify a class action, the risk of not recovering on the PAGA claim due to lack of manageability at trial, and various counter-arguments raised by Defendant related to proper classification of employees, (Kim Decl., Docket No. 36-2 ¶¶ 26, 30), the Court finds that recovery of nearly 40% of the total expected exposure is adequate.

The Court, however, cautions counsel that the maximum collectable attorneys' fees, 30% of the Gross Settlement Amount, exceeds this Circuit's benchmark for attorneys' fees. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) (establishing 25% of the common fund as a benchmark award for attorney fees).  At the final settlement hearing, when assessing motions for attorneys' fees, the Court will expect counsel to provide a detailed breakdown of legal costs and to justify the proposed recovery.  Nonetheless, the Court does not find the amount envisioned for class counsel, which remains subject to the Court's approval after further motion practice, to be so disproportionate as to indicate collusion.  *In re Bluetooth*, 654 F.3d at 947 (warning courts to "be particularly vigilant" for evidence that counsel receives a "disproportionate distribution of settlement"); *see also Briseño v. Henderson*, 998 F.3d 1014, 1024 (9th Cir. 2021) (noting that the 2018 amendments to Rule 23 require district courts to scrutinize "'the terms of any proposed award of fees…'") (quoting Fed. R. Civ. P. 23(e)(2)(C)(iii)).[6]

---

[6] That there is no "clear sailing arrangement" or fee-reversion-to-defendant term in the settlement agreement also counsels in favor of preliminary approval. *In re Bluetooth*,

1     The Court also advises counsel to be prepared to justify the proposed service

2     award for Plaintiffs, as $10,000 for each named Plaintiff seems disproportionate to the

3     estimated total recovery of approximately $200 for other class members.  *See, e.g.*,

4     *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 669–70 (E.D. Cal. 2008) (finding that a

5     service award with a disparity of $5,000 to $24.17 to be disproportionately large).

6     The award seems especially disproportionate since, despite the documented efforts of

7     Plaintiffs Rene Longoria and Nicolas Merezko, (*see* Longoria Decl., Docket No. 36-6;

8     Merezko Decl., Docket No. 36-5), they were not involved in the lawsuit for most of

9     the class action and only became involved when former plaintiff Thomas Morin

10    passed away.  Despite the Court's concerns, the Court finds that this factor does not

11    weigh strongly against preliminary approval because these concerns may be resolved

12    following further briefing at the Final Approval Hearing.

13                          *iv.  Equitable Treatment*

14            The Settlement, with the exception of the Court's concerns regarding Plaintiffs'

15    service awards, *supra* Section III.A.iii, does not provide preferential treatment to any

16    proposed class member.  Instead, it proposes that the gross Settlement amount be

17    divvied up based on "the number of compensable worksheets" for each class member.

18    (Mot., Docket No. 36 at 1−2).  That the proposed distribution method provides

19    equitable relief to all proposed class members weighs in favor of preliminary

20    approval.

21                          *v.  Presence of Governmental Entities*

22            Finally, the presence of LWDA in the litigation does not counsel against

23    preliminary approval.  (Mot., Docket No. 36 at 2 (noting that the settlement provides

24    for a payment to the LWDA for settlement of PAGA claims)).  The Court will have

25    the opportunity to confirm at the final hearing that Plaintiffs "provided the appropriate

26

27    654 F.3d at 947 (enumerating possible signs of collusion); (*see* Kim Decl. at Exh. B,
      page 29 (Class Counsel's Attorneys' Fees and Costs provision noting, *inter alia*, that
28    any fees not awarded to counsel revert to the class, not defendant)).

1    notice of the proposed settlement to relevant state and federal authorities…" *Id.* at

2    21−22.

3    **B.    Settlement Class Certification**

4    Next, the Court must determine whether the class may be preliminary and

5    conditionally certified for settlement purposes.  Class certification is a prerequisite to

6    preliminary settlement approval.  *See Spann v. J.C. Penney Corp*., 314 F.R.D. 312,

7    319 (C.D. Cal. 2016) ("[A]lthough the fact of settlement is relevant to the class

8    certification analysis, certification must nonetheless meet Rule 23(a) and (b)[]

9    requirements…").  Class certification is appropriate only if each of the four

10    requirements of Rule 23(a) and at least one of the requirements of Rule 23(b) are met.

11    *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997).  Under Rule 23(a), the

12    plaintiff must show: "(1) the class is so numerous that joinder of all members is

13    impracticable; (2) there are questions of law and fact common to the class; (3) the

14    claims or defenses of the representative parties are typical of the claims or defenses of

15    the class; and (4) the representative parties will fairly and adequately protect the

16    interests of the class."  Fed. R. Civ. P. 23(a).  Rule 23(b)(3) is satisfied where

17    "questions of law or fact common to class members predominate" over individual

18    questions, and the class action is "superior to other available methods for fairly and

19    efficiently adjudicating the controversy.  Fed. R. Civ. P. 23(b)(3).  The Court will

20    address each Rule 23(a) and Rule 23(b)(3) factor in turn.

*i.    Numerosity*

22    The first 23(a) factor—numerosity—is satisfied.  Under Rule 23(a)(1), a class

23    must be "so numerous that joinder of all members is impractical." *Id.*  "Numerosity is

24    presumed where the plaintiff class contains forty or more members." *In re Cooper*

25    *Cos. Inc. Sec. Litig*., 254 F.R.D. 628, 634 (C.D. Cal. 2009).

26    Here, the parties represent that there are approximately at least 3,159 class

27    members.  (Mot., Docket No. 36 at 1−2).  Thus, the putative class clearly meets the

28    numerosity requirement.  *See e.g., Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 512−13

1  (9th Cir. 2013) (finding that class of 500 putative class members satisfied the

2  numerosity requirement).

3          *ii.  Commonality*

4          The second factor under Rule 23(a)(2) requires that there be "questions of law

5  or fact common to the class."  Fed. R. Civ. P. 23(a).  Courts have held that even a

6  "single common question will do."  *Wal-Mart v. Dukes*, 564 U.S. 338, 359 (2011).

7  The common question cannot just be any question, however; it must be one that can

8  "generate common answers apt to drive the resolution of the litigation."  *Id.* at 350

9  (quoting Richard Nagareda, *Class Certification in the Age of Aggregate Proof*, 84

10  N.Y.U. L. Rev. 97, 132 (2009)) ("'What matters to class certification . . . is not the

11  raising of common 'questions' - even in droves - but rather the capacity of a classwide

12  proceeding to generate common answers apt to drive the resolution of the litigation.'").

13  In class actions challenging employer conduct, the plaintiff must present "significant

14  proof" that the employer operated under a uniform policy or practice to show

15  commonality.  *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 543 (9th Cir. 2013)

16  (quoting *Dukes*, 564 U.S. at 353).

17          Here, Plaintiff alleges that Defendant engaged in a uniform policy or practice of

18  requiring truck drivers to sign independent contractor agreements.  (Fourth Am.

19  Compl., Docket No. 23 ¶¶ 14, 23).  Whether class members are entitled to statutory

20  and civil penalties for this alleged misclassification is a question common to the whole

21  class.  (*See* Mot., Docket No. 36 at 11).  Plaintiffs also allege that Defendant required

22  truck drivers to maintain certain types of insurance, and to pay for fuel, overnight

23  lodging, cell phones, and data without reimbursement.  (Fourth Am. Compl., Docket

24  No. 23 ¶¶ 22, 24).  Whether Defendant must reimburse these business expenses is

25  another common question.  That the amount of damages may vary slightly for

26  individual class members does not defeat the appropriateness of preliminary class

27  certification.  *See, e.g.*, *Leyva v. Medline Indus.*, 716 F.3d 510, 514 (9th Cir. 2013)

28

1  (explaining that the presence of "individualized damages" alone does not defeat class

2  certification).

3          *iii. Typicality*

4          The third factor under Fed. R. Civ. P. 23(a)(3) requires that "the claims or

5  defenses of the representative part[y] are typical of the claims or defenses of the

6  class." Fed. R. Civ. P. 23(a).  The purpose of the typicality requirement is "to assure

7  that the interest of the named representative aligns with the interests of the class."

8  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992), *overruled on other*

9  *grounds by Dukes*, 564 U.S. at 347–48.  Typicality "is a permissive standard, and

10  representative claims are typical if they are reasonably co-extensive with those of

11  absent class members; they need not be substantially identical." *Thomas & Thomas*

12  *Rodmakers, Inc. v. Newport Adhesives and Composites*, 209 F.R.D. 159 (C.D. Cal.

13  2002) (quoting *Hanlon*, 150 F.3d at 1020) (cleaned up.  The Ninth Circuit does not

14  "insist that the named plaintiffs' injuries be identical with those of the other class

15  members, only that the unnamed class members have injuries similar to those of the

16  named plaintiffs and that the injuries result from the same, injurious course of

17  conduct." *Armstrong v. Davis*, 275 F.3d 849, 869 (9th Cir. 2001).

18          Here, Plaintiffs Rene Longoria and Nicolas Merezko were truck drivers who

19  were classified as independent contractors during the class period while employed by

20  Defendant.  (Fourth Am. Compl., Docket No. 23 ¶¶ 5, 6).  Accordingly, Plaintiffs'

21  claims are typical of those of the rest of the class, as both Plaintiffs and the class

22  members' claims arise from the uniform practice of classifying drivers as independent

23  contractors.

24          *iv. Adequacy*

25          The fourth factor under Fed. R. Civ. P. 23(a)(4) requires that Plaintiff and class

26  counsel adequately represent absent class members.  Fed. R. Civ. P. 23(a)(4).  To

27  satisfy the adequacy inquiry, courts must ask two questions "(1) Do the representative

28  plaintiffs and their counsel have any conflicts of interest with other class members,

1    and (2) will the representative plaintiffs and their counsel prosecute the action

2    vigorously on behalf of the class?" *See, e.g.*, *Staton v. Boeing Co.*, 327 F.3d 938, 957

3    (9th Cir. 2003).  There is no evidence of the record of a conflict of interest between

4    counsel and other class members.  Moreover, as discussed above, Plaintiff's counsel is

5    experienced class counsel, has vigorously litigated the action, and has attached to the

6    Motion various declarations detailing the experience of class counsel.  (Kim Decl.,

7    Docket No. 36-2; Han Decl., Docket No. 36-3).  Accordingly, the Court finds that

8    Plaintiff and Class Counsel satisfy the adequacy of representation factor.

9                    *v.  Rule 23(b)(3) Requirements*

10    In addition to the Rule 23(a) requirements, the requirements of Rule 23(b)(3)

11    are also satisfied.  Plaintiffs seek certification under Rule 23(b)(3), which requires the

12    court to find "the questions of law or fact common to class members predominate over

13    any questions affecting only individual members, and that a class action is superior to

14    other available methods for fairly and efficiently adjudicating the controversy."  Fed.

15    R. Civ. P. 23(b)(3).  "The requirement is satisfied if a plaintiff establishes that a

16    'common nucleus of facts and potential legal remedies dominates' the litigation."

17    *Wright v. Linkus Enters., Inc.*, 259 F.R.D. 468, 473 (E.D. Cal. 2009) (quoting *Hanlon*,

18    150 F.3d at 1022).

19    Here, as discussed above, Plaintiffs claims arise from the same alleged uniform

20    policies and practices as the rest of the class members—they too were classified as

21    independent contractors rather than employees by Defendant.  As a result, whether the

22    classification was improper is an issue that predominates for all class members.

23    Moreover, the significant size of the class, (Mot., Docket No. 36 at 1 (explaining that

24    there are over 3,000 class members)), potential expensive cost of individual litigation

25    with only the promise of a small award, and the strain on judicial resources should the

26    claims be tried individually make a class action superior.  Accordingly, the Court

27    finds that Rule 23(b)(3) is satisfied for the Settlement Class.

28    ///

16

1        **C.    Notice and Settlement Administration**

2              The proposed class notice is also approved.  Under Rule 23, "the court must

3       direct to class members the best notice that is practicable under the circumstances."

4       Fed. R. Civ. P. 23(c)(2)(B).  Class notice must state "(i) the nature of the action; (ii)

5       the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a

6       class member may enter an appearance through an attorney if the member so desires;

7       (v) that the court will exclude from the class any member who requests exclusion; (vi)

8       the time and manner for requesting exclusion; and (vii) the binding effect of a class

9       judgment on members under Rule 23(c)(3)."  Fed. R. Civ. P. 23(c)(2)(B)(i)–(vii).

10      Notice is satisfactory if it "generally describe[s] the terms of the settlement in

11      sufficient detail to alert those with adverse viewpoints to investigate and to come

12      forward and be heard."  *Lane v. Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir. 2012)

13      (internal quotation marks omitted).  It "does not require detailed analysis of the

14      statutes or causes of action forming the basis for the plaintiff class's claims, and it

15      does not require an estimate of the potential value of those claims."  *Id.*

16             Here, the Court finds that the proposed class notice is satisfactory as it contains

17      the required information under Rule 23(c)(2)(B).  (*See e.g.,* Kim Decl., Exh. B.1)

18      (describing the nature of the action and class claims, defining the Settlement Class and

19      PAGA Group Members, noting that individuals may enter an appearance or hire an

20      attorney, explaining when and how to seek exclusion from the class or to object to the

21      settlement, and providing the binding effects of the action).  Further, the Court finds

22      the notice plan as described in the Agreement is proper because individual notice will

23      be provided to all class members whose identities are known by verifying the

24      accuracy of all addresses through the USPS National Change of Address List and

25      performing a routine skip-trace procedure for any returned envelopes.  (Mot., Docket

26      No. 36 at 23).  *See Rannis v. Recchia*, 380 F. App'x 646, 650 (9th Cir. 2010)

27      (approving a notice plan where the administrator mailed notices to the last known

28

17

address and demonstrated "reasonable effort" by performing skip traces).  The notice proposal in the Settlement Agreement is therefore approved.

## IV.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff's Motion as follows:

- The proposed Settlement is preliminarily approved because it is fair, reasonable, and adequate, although the Court expects counsel to address issues discussed below in greater depth at the Final Approval Hearing;

- The proposed Settlement Class is preliminarily and conditionally approved for settlement purposes because it satisfies the requirements of Federal Rules of Civil Procedure 23(a) and (b)(3);

- Plaintiffs Rene Longoria and Nicolas Merezko are appointed as class representatives;

- Plaintiffs' counsel, Sam Kim and Yoonis Han of Verum Law Group, APC, are appointed as class counsel;

- Phoenix Class Action Administration Solutions is appointed to act as the settlement administrator in accordance with the Agreement's terms;

- The Court approves the proposed class notice and the Court directs the distribution of the notice in accordance with the schedule and procedures set forth in the Agreement;

The Final Approval Hearing will be held on May 24, 2024, at 1:30 p.m., in Courtroom 9B of the First Street Courthouse of the United States District Court for the Central District of California to determine whether the Court should give final approval to the Settlement as fair, reasonable, and adequate to the Class.  At this final hearing, the Court will hear all evidence and argument necessary to evaluate the Settlement and will also consider motions for approval of attorneys' fees and costs and for approval of the Class Representative Service Payment.  Class Members and their counsel may support or oppose the Settlement and the motions for an award of

attorneys' fees and costs and the Class Representative Service Payment, if they so desire, as set forth in the class notice.

Dated:  February 2, 2024

_____

HON. WESLEY L. HSU
UNITED STATES DISTRICT JUDGE