Sam Kim [SBN 258467]
Yoonis Han [SBN 256151]
**VERUM LAW GROUP, APC**
360 N. Pacific Coast Hwy, Suite 1025
El Segundo, CA 90245
Telephone: (424) 320-2000
Facsimile: (424) 221-5010
skim@verumlg.com
yhan@verumlg.com

Attorneys for Plaintiffs THOMAS A. MORIN, RENE LONGORIA, NICOLAS MEREZKO, and all other similarly situated persons

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS A. MORIN, RENE LONGORIA, NICOLAS MEREZKO, on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br><br>          v.<br><br>DEALERS' CHOICE TRUCKAWAY SYSTEM, INC. dba TRUCKMOVERS, a Kansas corporation, and DOES 1-20, inclusive,<br>                    Defendants. | Case No. 2:23-cv-00216-WLH-SK<br><br>Judge: Hon. Wesley L. Hsu<br>Magistrate Judge: Hon. Steve Kim<br>Courtroom: 9B<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Hearing Date: May 24, 2024<br>Time: 1:30 p.m. |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD**:

PLEASE TAKE NOTICE THAT on May 24, 2024 at 1:30 p.m., in Courtroom 9B of the United States District Court for the Central District of California, located at 350 W. 1st Street, 9th Floor, Los Angeles, CA 90012, Plaintiffs RENE LONGORIA and NICOLAS MEREZKO (collectively, "Plaintiffs"), and Plaintiffs' Counsel will and hereby do move for final approval of the proposed

Stipulation, Settlement, and Release of Class Action and Private Attorneys General Act Claims ("Settlement" or "Settlement Agreement") with Defendant DEALER'S CHOICE TRUCKAWAY SYSTEM, INC. dba TRUCKMOVERS ("Defendant") (collectively, "Parties").  Specifically, Plaintiffs move the Court pursuant to Rule 23 of the Federal Rules of Civil Procedure for an order finally approving the Settlement as fair, reasonable, and adequate.  This Motion is made on the grounds that the Settlement is fair, adequate, and reasonable given the relative strengths and weaknesses of the claims and defenses; the risks, expense, complexity and likely duration of further litigation; the amount offered in settlement; the experience and views of counsel; and the public policy in favor of quieting litigation.

This Motion is based upon the accompanying (1) Memorandum of Points and Authorities, (2) the Declaration of Sam Kim, (3) the Declaration of Yoonis Han, (4) the Declaration of Kevin Lee, (5) the previously filed Declaration of Angela S. Cash (Dkt. No. 38); (6) the previously filed Declaration of Rene Longoria (Dkt. No. 36-6); (7) the previously filed Declaration of Nicolas Merezko (Dkt. No. 36-5); (8) the Supplemental Declaration of Kevin Lee filed on May 7, 2024; and (9) the exhibits attached to the foregoing declarations, and such other oral arguments and documentary evidence as may be presented to the Court at the hearing of this Motion.

Finally, Plaintiffs have complied with L.R. 7-3 by thoroughly discussing the substance and potential resolution of the filed motion.  See Declaration of Sam Kim ("Kim Decl.") ¶ 9.

Dated:  April 26, 2024            **VERUM LAW GROUP, APC**


                                 By:_____/s/ Sam Kim_____
                                      Sam Kim
                                      Yoonis Han
                                 Attorneys for Plaintiffs Rene Longoria
                                 and Nicolas Merezko

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

# **TABLE OF CONTENTS**

I.     INTRODUCTION ........................................................................................ 1

II.    SUMMARY OF THE LITIGATION ........................................................ 2

   A.  Procedural History ............................................................................. 2

   B.  Discovery ........................................................................................... 3

   C.  Mediation ........................................................................................... 4

   D.  Order Granting Preliminary Approval and Notice under CAFA ............... 5

III.   SUMMARY OF THE SETTLEMENT TERMS ........................................ 5

IV.    THE NOTICE AND SETTLEMENT ADMINISTRATION PROCESS WAS COMPLETED PURSUANT TO THE COURT'S ORDER ........................ 9

V.     ARGUMENT ........................................................................................... 11

   A.  The Standard for Final Approval Has Been Met ........................................ 11

VI.    Class Counsel Conducted a Thorough Investigation of the Factual and Legal Issues ........................................................................................... 13

VII.   The Settlement Was Achieved After Evaluating the Strengths of Plaintiffs' Case and the Risks, Expenses, Complexity, and Likely Duration of Further Litigation ........................................................................................... 13

VIII.  The Settlement Was Reached Through Arm's-Length Bargaining in Which the Parties Were Represented by Experienced Counsel ........................... 15

IX.    The Class Has Responded Positively to the Settlement ............................. 16

X.     The Proposed PAGA Settlement Is Reasonable ........................................ 17

XI.    CONCLUSION ........................................................................................ 18

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*7-Eleven Owners for Fair Franchising v. Southland Corp.*, 85 Cal. App. 4th 1135 ................................................................................................................. 16

*Apple Computer, Inc. Derivative Litig*, 2008 U.S. Dist. LEXIS 108195 (N.D. Cal. Nov. 5, 2008) ................................................................................................. 15

*Churchill Village, LLC v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004) ................... 16

*Clesceri v. Beach City Investigations & Protective Servs.*, 2011 U.S. Dist. LEXIS 11676 ............................................................................................................. 14

*D'Amato v. Deutsche Bank*, 236 F.3d 78 .......................................................... 15

*Doty v. Costco Wholesale Corp.*, ..................................................................... 16

*Gomez v. Amadeus Salon, Inc.*, .......................................................................... 17

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 .......................................................... 12

*Hopson v. Hanesbrands Inc.*, 2009 U.S. Dist. LEXIS 33900 ............................. 17

*Kullar v. Foot Locker Retail, Inc.*, 168 Cal. App. 4th 116 ................................. 14

*Lane v. Facebook, Inc.*, 2010 U.S. Dist. LEXIS 24762 ..................................... 14

*Lim v. Victoria's Secret Stores, Inc.* ................................................................. 17

*Nordstrom Com. Cases*, 186 Cal. App. 4th 576 ................................................ 17

*Palencia v. 99 Cents Only Stores* ...................................................................... 16

*Sorenson v. PetSmart, Inc.*, .............................................................................. 17

*Staton v. Boeing Co.*, 327 F.3d 938 ................................................................. 12

*Valiente v. Swift Transp. Co. of Arizona, LLC,* 54 F.4th 581 (9th Cir. 2022) ......... 3

*Volkswagon "Clean Diesel" Mktg., Sales Practices, &Prods. Liab. Litig.*, 2016 WL 4010049 ................................................................................................... 15

**Statutes**

28 U.S.C. § 1332(d)(2) ....................................................................................... 3

28 U.S.C. § 1715 ................................................................................................ 5

California Business & Professions Code § 17200 ............................................ 6, 8

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

California Labor Code sections 201, 202, 203, 212, 221, 226, 226.7, 226.8, 256, 512, 558, 1021.5, 1174, 1182.11, 1182.12, 1194, 1194.2, 1197, 1197.1, and 2802 .................................................................................... 8

California Labor Code sections 201, 202, 203, 212, 226, 1021.5, 1174, 1182.11, 1182.12, 1194, 1194.2, 1197, and 2802 ............................ 6

Labor Code § 221 ............................................................................ 3

Labor Code § 226.8 ......................................................................... 3

Labor Code § 2699 (1)(2) ............................................................... 4

Labor Code § 2699 (l)(2) ............................................................. 18

**Other Authorities**

Manual for Complex Litigation § 21.632 (4th ed. 2004) ................... 11

**Rules**

§ 21.634 ........................................................................................ 12

Fed. R. Civ. Proc. 23 (a) ............................................................... 12

L.R. 7-3 ......................................................................................... ii

Rule 23 of the Federal Rules of Civil Procedure ........................... ii, 12

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

On February 2, 2024, the Court granted preliminary approval of the Stipulation, Settlement and Release of Class Action and Private Attorneys General Act Claims ("Settlement" or "Settlement Agreement") entered between Plaintiff RENE LONGORIA ("Plaintiff Longoria") and NICOLAS MEREZKO ("Plaintiff Merezko") (collectively, "Plaintiffs") and Defendant DEALERS' CHOICE TRUCKAWAY SYSTEM INC. dba TRUCKMOVERS ("Defendant") (collectively, Plaintiffs and Defendant are hereinafter referred to as the Parties). See Order Re: Motion for Preliminary Approval of Class Action Settlement ("Preliminary Approval Order") (Dkt. No. 40).  After over 5 years and 11 months of litigation and preliminary approval, Plaintiffs now seek final approval of this non-reversionary Settlement of $1,100,000 dollars for approximately 3,878 Settlement Class Members. An objective evaluation of the Settlement confirms that the requirements of Fed. R. Civ. Proc. 23(e) have been satisfied. Further, the relief negotiated on behalf of the Settlement Class is fair, reasonable, and adequate in light of the risks of continued litigation, supporting Plaintiffs' request that the Court grant an order finally approving the Settlement.

The Preliminary Approval Order approved distribution of the Notice Packet by Phoenix Settlement Administrators, the Settlement Administrator. See Preliminary Approval Order § IV (Dkt. No. 40).  Settlement Class Members were given 45 days to opt out or object to the Settlement ("Response Deadline").  See Exhibit A attached to the Declaration of Sam Kim ("Kim Decl.") ¶ 10, Settlement Agreement § I (FF).  To date, no Requests for Exclusions, no Notices of Objections, and only two Workweek disputes have been received by the Settlement Administrator.  See Declaration of Kevin Lee ("Lee Decl.") ¶¶ 7-9.  Because the response deadline of May 1, 2024, has not passed, Plaintiffs will file a supplemental declaration from Kevin Lee on May 7, 2024, confirming the total number of opt-

outs, objections, and workweek disputes.  The highest Individual Labor Code Payment to be paid is approximately $36,428.60, the lowest Individual Labor Code Payment to be paid is approximately $40.12, while the average Individual Labor Code Payment to be paid is approximately $167.78.  Lee Decl., ¶ 14.

As discussed below, the Settlement was negotiated by the Parties at arm's length with guidance from Lynn Frank, Esq., an experienced and well-respected class action mediator.  The relief offered by the Settlement is particularly fair and reasonable when viewed against the difficulties encountered by Plaintiffs in this Lawsuit if the case were to proceed towards class certification and trial. Accordingly, given the Settlement's favorable terms and the manner in which these terms were negotiated and received by Settlement Class Members, Plaintiffs respectfully request that the Court grant this Motion for Final Approval of Class Action Settlement, enter a judgment, and retain jurisdiction to enforce the Settlement.

## II.    SUMMARY OF THE LITIGATION

The Settlement aims to resolve a proposed class and representative action lawsuit against Defendants.

### A. Procedural History

On May 23, 2018, Plaintiff Thomas Morin ("Plaintiff Morin") filed a proposed class action in the Los Angeles Superior Court alleging the following claims: 1) willful misclassification of employees; 2) reimbursement of business expenses; 3) failure to make payment in negotiable instrument; 4) unlawful deductions from wages; 5) failure to provide-off duty meal periods; 6) failure to provide off-duty rest periods; 7) failure to pay minimum wages; 8) failure to furnish accurate wage statements; 9) waiting time penalties; and 10) violation of the Unfair Competition law (the "Action").  Kim Decl., ¶ 11.

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT

On August 23, 2018, Plaintiff Morin filed his First Amended Complaint, adding a claim under the PAGA ("Morin PAGA Claim"). Kim Decl., ¶ 12.

On November 15, 2019, Plaintiff Morin filed his Second Amended Complaint ("SAC"), which: 1) dismissed the claim for: a) willful misclassification under Labor Code § 226.8; b) failure to make payment by negotiable instrument under Labor Code § 212; and c) unlawful deductions from wages under Labor Code § 221; and 2) clarified that Plaintiff Morin is not seeking meal and rest period penalties after December 28, 2018. Kim Decl., ¶ 13.

On December 1, 2022, Plaintiff Rene Longoria ("Plaintiff Longoria") submitted his PAGA Notice to the LWDA. See Exhibit B, Kim Decl., ¶ 14, Plaintiff Longoria's PAGA Notice.

On January 12, 2023, Defendant removed the Action to federal court under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). Kim Decl., ¶ 15.

On April 3, 2023, Plaintiffs filed the Fourth Amended Complaint ("4AC"), which dismissed the meal and rest period claims based on the Ninth Circuit decision in *Valiente v. Swift Transp. Co. of Arizona, LLC,* 54 F.4th 581 (9th Cir. 2022) and added a PAGA claim on behalf of Plaintiff Longoria. Kim Decl., ¶ 16.

**B. Discovery**

Prior to attending mediation, Plaintiffs and Defendant engaged in an initial round of written discovery, which included producing responses and documents. Kim Decl., ¶ 17. Through discovery, Plaintiffs sought, among other things, contact information for prospective class members, their time and pay records, and Defendant's policies and practices. *Id.*

Following receipt of the contact information for prospective class members, Plaintiffs spoke to numerous prospective class members and obtained sixteen (16) declarations in support of class certification. Kim Decl., ¶ 18.

In addition, Plaintiffs and Defendant also agreed to informally exchange the

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

following information and documents, amongst others, in preparation for mediation: 1) driver log data; 2) available information for all loads that Settlement Class Members drove for Defendant that had a pick-up or delivery in or passed through California ("California Loads"); 3) compensation records, including load payments, reimbursements, fuel surcharges, deck certifications, hazard insurance, rental car, contractor incentives; 4) incentive programs; 5) independent contractor agreements used by Defendant during the Class Period; 6) mileage data during the Class Period by state; 7) mileage data for any miles driven during the Class Period in California; 8) total number of Class Members who worked for Defendant during the Class Period; and 9) total number of current Class Members who work for Defendant.  Kim Decl., ¶ 19.

**C. Mediation**

On July 18, 2023, the Parties attended mediation with Lynn Frank, Esq., a well-respected mediator for wage and hour claims.  Kim Decl., ¶ 20.  Following a full day of mediation, the Parties reached a resolution, which included the material terms of the Settlement.  *Id*.

Over the next 3 months, the Parties continued to draft and negotiate the long-form Settlement, which was finalized and mutually executed on October 11, 2023, after resolving numerous disputes over the terms of the Settlement.  See Exhibit A attached to Kim Decl., ¶ 10, Stipulation, Settlement, and Release of Class Action and Private Attorneys General Act Claims ("Settlement Agreement" or "Settlement"); and ¶ 21.  Lastly, Plaintiffs submitted the Settlement to the LWDA pursuant to Labor Code § 2699 (1)(2) on October 11, 2023.  See Exhibit C, Kim Decl., ¶ 22.

///

///

///

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT

**D. Order Granting Preliminary Approval and Notice under CAFA**

On October 13, 2023, Plaintiffs filed their Motion for Preliminary Approval of Class Settlement, including declarations from Class Counsel and Plaintiffs. See Plaintiffs' Motion for Preliminary Approval of Class Action Settlement (Dkt. No. 36).

On October 30, 2023, Defendant served notice on all federal and state officials required to be noticed of the settlement under the Class Action Fairness Act Notice ("CAFA Notice"), as required by 28 U.S.C. § 1715. See Declaration of Angela S. Cash Regarding Defendant's Class Action Fairness Act Notice ("Cash Decl.") ¶¶ 1-5 (Dkt. No. 38).

On February 2, 2024, the Court entered the Preliminary Approval Order, which, inter alia, provisionally certified the Settlement Class for settlement purposes, designated Plaintiffs as Class Representatives, designated Plaintiffs' Counsel as Class Counsel, authorized retention of Phoenix Settlement Administrators as the Settlement Administrator, approved the Notice Packet and proposed notice procedures, and set the Final Approval Hearing for May 24, 2024 at 1:30 p.m. Kim Decl., ¶ 23; see also Preliminary Approval Order (Dkt. No. 40).

**III.    SUMMARY OF THE SETTLEMENT TERMS**

Plaintiffs' Counsel believe that the Settlement submitted to this Court for preliminary approval is a fair and reasonable result for the Settlement Class. As of the Effective Date and Conditions Precedent, in exchange for the consideration set forth in this Agreement, the claims settled, fully released and forever discharged by the Settlement Class Members, including Plaintiffs, constitute any and all claims, causes of action, or legal theories that are asserted in, arising from, or reasonably related to the factual allegations made in the Action. The released class claims include all claims, causes of action, or legal theories that were or could have been asserted based on the factual allegations alleged in the Action up through and

specifically including the entire Class Period, whether or not specifically delineated as a claim or cause of action in the Action, including but not limited to those alleged in the operative complaint in the Action, including claims that arise from or are reasonably related to  the claims and facts alleged in the Action, and any claims which could have reasonably been asserted in the Action arising from the alleged facts and/or primary rights alleged to have been invaded, any alleged misclassification of Settlement Class Members as independent contractors rather than employees, and any claims that are premised upon or that allege failure to reimburse business expenses, failure to pay minimum wages, failure to furnish accurate wage statements, waiting time penalties, and claims arising under or relating to the alleged violations of California Labor Code sections 201, 202, 203, 212, 226, 1021.5, 1174, 1182.11, 1182.12, 1194, 1194.2, 1197, and 2802, applicable California IWC Wage Orders, including but not limited to IWC Wage Order No. 9-2001; and California Business & Professions Code § 17200 *et seq*. against the Released Parties ("Released Class Claims"), and the Settlement commits Defendant to pay to $1,100,000.00 ("Gross Settlement Amount"). Settlement § N.   This is a non-reversionary Settlement.  Settlement § N.

The Net Settlement Amount is the Gross Settlement Amount, less the Service Awards, LWDA PAGA Payment, Class Counsel Costs Award, Class Counsel Fees Award, and Settlement Administration Costs.  Settlement § T.

The Service Award is the Court approved payment of no more than Ten Thousand Dollars and Zero Cents ($10,000.00) to each Class Representative, totaling Twenty Thousand Dollars and Zero Cents ($20,000.00), in addition to their Individual Settlement Payments, in recognition of their efforts and risks in assisting with the prosecution of the Action and in exchange for their execution of a general release of known and unknown claims and waiver pursuant to California Civil Code § 1542.  Settlement § FF.

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

The PAGA Payment is the amount of Fifty Thousand Dollars and Zero Cents ($50,000.00) allocated to penalties under the PAGA.  Settlement § Y.  The LWDA PAGA Payment is Thirty-Seven Thousand Five Hundred Dollars and Zero Cents ($37,500.00), which is seventy-five percent (75%) of the PAGA Payment, that shall be paid by the Settlement Administrator directly to the LWDA.  Settlement § S. The Individual PAGA Payment is the amount of Twelve Thousand Five Hundred Dollars and Zero Cents ($12,500.00) remaining from the PAGA Payment after the payment of the LWDA PAGA Payment payable to each PAGA Group Member on a pro rata basis.  Settlement § P.

The Class Counsel Fees Award is the attorneys' fees for Class Counsel's litigation and resolution of the Action, which are not to exceed 30% of the Gross Settlement Amount, or Three Hundred Thirty Thousand Dollars and Zero Cents ($330,000.00) and are paid from the Gross Settlement Amount.  Settlement § E. Concurrently filed with this Motion is Plaintiffs' Motion for Attorneys' Fees, Costs, and Service Award Payment.  ("Fee Motion").

The Class Counsel Costs Award is the expenses and costs incurred by Class Counsel in connection with litigation of the Action, which are not to exceed Nineteen Thousand Dollars ($19,000.00) and are paid from the Gross Settlement Amount.  Settlement § D.  In the Fee Motion, Plaintiffs seek recovery of Sixteen Thousand Eight Hundred Forty-Four Dollars and Ninety-Nine Cents ($16,844.99) in costs spent in the prosecution of this Action.

The Settlement Administration Costs is the costs payable from the Gross Settlement Amount to the Settlement Administrator not to exceed Thirty-Five Thousand Dollars and Zero Cents ($35,000.00) for administering this Settlement, including, but not limited to, the Settlement Administrator's responsibilities outlined in this Settlement Agreement.  Settlement § GG.  In the Fee Motion, Plaintiffs seek approval of the payment to the Settlement Administrator in the

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

amount of Thirty-Two Thousand Five Hundred Dollars and Zero Cents ($32,500.00)

As of the Effective Date and Conditions Precedent, in exchange for the PAGA Payment set forth in this Agreement, the claims settled, fully released and forever discharged by Plaintiff Longoria as a representative of the State of California and on behalf of the LWDA, constitute any and all claims, causes of action, or legal theories that are asserted in, arising from, or reasonably related to the factual allegations made in the Action and PAGA Notice. The released PAGA claims include all claims, causes of action, or legal theories that were or could have been asserted based on the factual allegations alleged in the Action and PAGA Notice alleged up through and specifically including the entire PAGA Period, whether or not specifically delineated as a claim or cause of action in the Action, including but not limited to those alleged in Plaintiff Longoria's PAGA Notice provided to the LWDA, the operative complaint in the Action, including claims that arise from or are reasonably related to the claims and facts alleged in the Action, and any claims which could have reasonably been asserted in the Action arising from the alleged facts and/or primary rights alleged to have been invaded, any alleged misclassification of Settlement Class Members as independent contractors rather than employees, and any claims that are premised upon or that allege failure to reimburse business expenses, failure to pay minimum wages, failure to furnish accurate wage statements, waiting time penalties, and claims arising under or relating to the alleged violations of California Labor Code sections 201, 202, 203, 212, 221, 226, 226.7, 226.8, 256, 512, 558, 1021.5, 1174, 1182.11, 1182.12, 1194, 1194.2, 1197, 1197.1, and 2802, applicable California IWC Wage Orders, including but not limited to IWC Wage Order No. 9-2001; and California Business & Professions Code § 17200 *et seq*., against the Released Parties ("Released PAGA Claims"). The release extends to all remedies that could be

8

claimed for any Released PAGA Claims, including but not limited to statutory, constitutional, contractual, and common law claims for interest, attorneys' fees and costs, injunctive relief, punitive damages, liquidated damages, restitution, disgorgement, and civil and/or statutory penalties. PAGA Group Members who opt out of participating in the Settlement as Settlement Class Members will still receive their respective portions of the PAGA Payment based on their Compensable PAGA Pay Periods and will be bound to the Judgment entered by the Court as to the Released PAGA Claims. Upon approval of the Agreement, Plaintiff Longoria and the PAGA Group Members shall be forever barred from pursuing against the Released Parties any and all claims, causes of action, or legal theories that are asserted in, arising from, or reasonably related to the factual allegations made in the Action and PAGA Notice during the PAGA Period. Settlement § D

Only Plaintiffs will agree to a general release of known and unknown claims and waiver pursuant to California Civil Code § 1542. Settlement § E.

Finally, based on the terms of the Settlement, the Net Settlement Amount is estimated at $663,155.01. Lee Decl., ¶ 13.

## IV.    THE NOTICE AND SETTLEMENT ADMINISTRATION PROCESS WAS COMPLETED PURSUANT TO THE COURT'S ORDER

As authorized by the Court's Preliminary Approval Order, the Parties engaged Phoenix Settlement Administrators ("Phoenix" or "Settlement Administrator") to provide settlement administration services. Preliminary Approval Order § IV (Dkt. No. 40). Phoenix was responsible for: (i) preparing, translating, printing, and mailing the *Notice of Proposed Class Action Settlement* ("Notice Packet"); (ii) responding to inquiries from Settlement Class Members; (iii) confirming the number of weeks each Settlement Class Member worked during the period from May 23, 2014 to February 2, 2024 ("Class Period") and the number of workweeks that each PAGA Group Member worked during the time period from

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

December 1, 2021 to February 2, 2024 ("PAGA Period"); (iv) determining the validity of letters indicating a request to be excluded from the class settlement ("Requests for Exclusion"), written objections to the class settlement ("Objections"), and/or dispute regarding the number of Workweeks submitted by Settlement Class Members; (v) calculating the Net Settlement Amount and the Individual Labor Code Payments to Settlement Class Members; (vi) calculating and issuing the Individual Labor Code Payments and distributing them to Settlement Class Members and Individual PAGA Payments to PAGA Group Members; (vii) issuing the payment to Class Counsel for attorneys' fees and costs, the Service Award to Plaintiffs; and (viii) such other tasks as set forth in the Settlement Agreement or as the Parties mutually agree or as the Court orders. Lee Decl., ¶ 2.

The Notice Packet summarized the principal terms, provided Settlement Class Members with an estimate of how much they would receive if the Settlement is finally approved, and advised Settlement Class Members how to opt-out of the Settlement and how to object to the Settlement, including disputing the estimated Individual Labor Code Payment. See Exhibit A, Lee Decl., ¶ 5, Notice Packet. Separately, on March 13, 2024, Defendant's Counsel provided Phoenix with the Driver List that contained names, last known mailing addresses, Social Security numbers, and workweeks for each Settlement Class Member ("Driver List"). Lee Decl., ¶ 3.

On March 18, 2024, Phoenix conducted a National Change of Address ("NCOA") search in an attempt to update the Driver List of addresses as accurately as possible. Lee Decl., ¶ 4.

On March 18, 2023, Phoenix mailed the Notice Packet via U.S. first class mail, in English and Spanish, to all three thousand eight hundred seventy-eight (3,878) Settlement Class Members on the Driver List. Lee Decl., ¶ 5. Based on the date of mailing, Settlement Class Members have until May 1, 2024, to submit

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

objections, disputes, and/or Requests for Exclusions.  Lee Decl., ¶¶ 8-10.  Because the response deadline of May 1, 2024, has not passed, Plaintiffs will file a supplemental declaration from Kevin Lee on May 7, 2024, confirming the total number of opt-outs, objections, and workweek disputes.  However, to date, no Requests for Exclusions, no Notices of Objections, and only two Workweek disputes have been received by the Settlement Administrator.  Lee Decl. ¶¶ 7-9.

Any checks that are not cashed within 180 days of issuance, including any accrued interest that has not been distributed pursuant to the Order of this Court, will be distributed by the Settlement Administrator to the California State Controller's Office Unclaimed Property Fund in the name of the Participating Member.  Settlement Agreement § III (O)(1)(d).

## V.    ARGUMENT

### A. The Standard for Final Approval Has Been Met

A class action may only be settled, dismissed, or compromised with the Court's approval. Fed. R. Civ. Proc. 23(e). The process for court approval of a class action settlement is comprised of three principal stages.

(1)  Preliminary Approval. The proposed settlement agreement is preliminarily reviewed by the Court for fairness, adequacy, and reasonableness. If the Court believes the settlement falls within the range of reasonableness, such that proceeding to a formal fairness hearing is warranted, the Court orders notice of the settlement disseminated to the class. See Manual for Complex Litigation § 21.632 (4th ed. 2004).

(2) Notice Procedures: Notice of the settlement is disseminated to the class, giving class members an opportunity to object to the settlement's terms or preserve their right to bring an individual action by opting out of the settlement. See *Id*. § 21.633.

(3) Final Approval. A formal fairness or final approval hearing is held by the Court, at which time class members can be heard regarding the settlement and

further evidence and arguments concerning the fairness, adequacy, and reasonableness of the settlement is presented. Following the hearing, the Court decides whether to approve the settlement and enter a final order and judgment. See *Id*. § 21.634.

The first two steps have been completed. See generally, Preliminary Approval Order, and Lee Decl. The Court has preliminarily reviewed the proposed settlement for fairness and found it to be within the range of reasonableness meriting court approval. See Preliminary Approval Order (Dkt. No. 40). In addition, the Settlement Administrator notified Settlement Class Members of the proposed settlement and the upcoming fairness hearing as directed by the Court. See generally; Lee Decl. Plaintiffs now request the Court grant final approval of the proposed Settlement.

The decision whether to approve the proposed Settlement is committed to the sound discretion of the trial judge, and will not be overturned except upon a strong showing of a clear abuse of discretion. *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1026-27 (9th Cir.1998). Rule 23 (e) of the Fed. R. Civ. Proc. requires that the court find a class settlement to be fair, reasonable and adequate before entering final approval. Courts balance several factors in determining whether a settlement is fair, adequate and reasonable, in compliance with Fed. R. Civ. Proc. 23 (a), such as "the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Staton v. Boeing Co*., 327 F.3d 938, 959 (9th Cir. 2003) (internal citation and quotation marks omitted).

These factors, discussed below, confirm that the Settlement is fair, reasonable, and adequate for Settlement Class Members. The Settlement provides

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

reasonable value, and Settlement Class Members need not bear the risk and delay associated with moving for class certification and trial. Further, the Settlement has been met with substantial support from Settlement Class Members, as evidenced by the 100% participation rate to date. Lee Decl., ¶ 8.

## VI. Class Counsel Conducted a Thorough Investigation of the Factual and Legal Issues

Since filing the Action on May 23, 2018, Plaintiffs' Counsel has worked diligently to prosecute the class claims subject to an agreed stay of the case so the Parties would have the benefit of pending appellate decisions on key issues in the case, engaged in formal and informal discovery with numerous lengthy discussions with Defendant's counsel, and pushed the case efficiently towards mediation, all of which ultimately yielded the instant Settlement. Kim Decl., ¶¶ 11-19. In addition, Plaintiffs' Counsel worked through numerous hurdles in this case, including Defendant's Motion to Quash Service of Summons and Complaint and Defendant's Demurrer to Plaintiff's Second Amended Complaint. Kim Decl., ¶ 24. Plaintiffs' Counsel also propounded written discovery including document requests and special interrogatories and met and conferred with Defendant on numerous occasions to resolve disputes. Kim Decl., ¶ 25. Through discovery and lengthy meet and confer sessions, Plaintiffs' counsel obtained documents revealing the company's policies and procedures as well as compensation records (and daily log information). Kim Decl., ¶ 26. These records provided sufficient information to calculate Defendant's potential exposure at this stage. *Id*.

## VII. The Settlement Was Achieved After Evaluating the Strengths of Plaintiffs' Case and the Risks, Expenses, Complexity, and Likely Duration of Further Litigation

In considering the complexity, expense, and likely duration of the litigation, courts weigh the benefits of the settlement against the expense and delay involved

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

in achieving an equivalent or even more favorable result at trial. *Lane v. Facebook, Inc.*, 2010 U.S. Dist. LEXIS 24762, *19 (N.D. Cal. 2010); see *Kullar v. Foot Locker Retail, Inc.*, 168 Cal. App. 4th 116, 129 (2008). However, "[j]udicial policy favors settlement in class actions, as substantial resources can be saved by avoiding the time, cost, and rigors of formal litigation." *Clesceri v. Beach City Investigations & Protective Servs.*, 2011 U.S. Dist. LEXIS 11676, *22 (C.D. Cal. 2011).

That this is a class action further amplifies the economies of time, effort and expense achieved by this Settlement. Based on review of documentary evidence and data produced by Defendant, both formally and informally, in the course of litigation and settlement negotiations, Plaintiffs' Counsel assessed the potential value of the class claims being released by the proposed Settlement (and explanation of the factors bearing on the amount of the compromise). See Kim Decl., ¶¶ 28-33. Based on these calculations and factors (and Additional Risk Factors, set forth in Kim Decl., ¶ 34), the total realistic exposure if Plaintiffs were successful on all claims at trial is $2,865,872.99. (excluding penalties under the PAGA). Kim Decl., ¶ 33. However, the realistic exposure for all claims is $2,969,372.99. *Id.* For the PAGA Claim, based on the contested issues in this case, Plaintiffs discounted the PAGA exposure by 95%, resulting in an estimated realistic exposure of $103,500.00. Kim Decl., ¶ 32. Accordingly, the Gross Settlement Amount of $1,100,00.00 therefore represents approximately 37.04% of Plaintiffs' reasonably forecasted recovery for all claims (including the PAGA Claim), while avoiding the further expense and risk of proceeding with class certification and trial. Kim Decl., ¶ 35. The details of the exposure analysis and discounts for the PAGA Claim are further detailed in Kim Decl., ¶ 31. In addition to the factors outlined above, Plaintiffs also weighed the following risk factors, which are detailed in Kim Decl., ¶ 34.

When weighed against the tremendous uncertainty of further litigation and

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT

the potential for the class to receive nothing or wait through years of litigation and/or appeals, class members are far better served by the proposed Settlement than further and protracted litigation.

**VIII. The Settlement Was Reached Through Arm's-Length Bargaining in Which the Parties Were Represented by Experienced Counsel**

As discussed above, the Parties engaged in a full-day mediation on July 18, 2023, with Lynn Frank, Esq. Kim Decl., ¶ 20. In addition, although the Parties reached an agreement in principle, the Parties continued to negotiate and draft the long-form settlement agreement. Kim Decl., ¶ 21. There is no indication that the negotiations were collusive or unfair to Settlement Class Members.

A mediator's participation weighs considerably against any inference of a collusive settlement. See *In re Apple Computer, Inc. Derivative Litig*, 2008 U.S. Dist. LEXIS 108195 (N.D. Cal. Nov. 5, 2008); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir.2001) (a "mediator's involvement in pre-certification settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure."). At all times, the Parties' negotiations were adversarial and non-collusive. Kim Decl., ¶ 36.

As this Settlement is the "result of arm's-length negotiations by experienced Class Counsel [it] is entitled to 'an initial presumption of fairness.'" *In re Volkswagon "Clean Diesel" Mktg., Sales Practices, &Prods. Liab. Litig*., 2016 WL 4010049, at *14 (N.D. Cal. July 26, 2016) (internal citation omitted). There is no reason to doubt Class Counsel's experience, knowledge or commitment. Class Counsel are highly experienced and knowledgeable regarding complex federal and state wage and hour class actions, such as this action. Kim Decl., ¶¶ 3-8; see also Declaration of Yoonis Han ("Han Decl.") ¶¶ 3-9. Indeed, Class Counsel has handled many wage and hour cases alleging claims just like those raised in this lawsuit. Kim Decl., ¶¶ 5, 8; see also Han Decl., ¶ 9. In sum, Class Counsel fully committed their resources to representing the Settlement Class, have the skill and

15

expertise to do it properly, and will continue to do so.  Class Counsel believes the Settlement provides a reasonable recovery for the Settlement Class based on their prior experience and investigation of this case, and therefore request that the Court grant final approval of the Settlement.

## IX.    The Class Has Responded Positively to the Settlement

The Settlement Class's response to date demonstrates its support for this Settlement.   None of the Settlement Class Members have filed a Request for Exclusion or Objection to the Settlement. Lee Decl., ¶¶ 8-9.  Because the response deadline of May 1, 2024, has not passed, Plaintiffs will file a supplemental declaration from Kevin Lee on May 7, 2024, confirming the total number of opt-outs, objections, and workweek disputes.  Settlement Class Members will share the entire Net Settlement Amount and will receive an average payment of $167.78, with the highest payment estimated at $36,428.60, and the lowest at $40.12.  Lee Decl., ¶ 14.  A low number of opt-outs and objections is a strong indicator that a settlement is fair and reasonable. See, e.g., *Churchill Village, LLC v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004) (affirming settlement approval where 45 of approximately 90,000 notified class members objected and 500 opted out); *7-Eleven Owners for Fair Franchising v. Southland Corp.*, 85 Cal. App. 4th 1135, 1152-53 (2000) (class response favorable where "[a] mere 80 of the 5,454 national class members elected to opt out [(1.5% of the entire Class)] and . . . [a] total of nine members . . . objected to the settlement"). The Class Members' response – both in the extremely low rate of opt-outs and lack of objectors – compares favorably to those cases and warrants final approval.  Likewise, the average Settlement Class Member recovery of $167.78 compares favorably to other wage and hour class action settlements for similar claims on behalf of hourly employees, taking into account denial of class certification.  See, e.g., *Palencia v. 99 Cents Only Stores*, No. 34-2010-00079619 (Sacramento County Super. Ct.) (average net recovery of approximately $80); *Doty v. Costco Wholesale Corp.*, Case No. CV05-

16

3241 FMC-JWJx (C.D. Cal. May 14, 2007) (average net recovery of approximately $65); *Sorenson v. PetSmart, Inc.*, Case No. 2:06-CV-02674-JAM-DAD (E.D. Cal.) (average net recovery of approximately $60); *Lim v. Victoria's Secret Stores, Inc.*, Case No. 04CC00213 (Orange County Super. Ct.) (average net recovery of approximately $35); *Gomez v. Amadeus Salon, Inc.*, Case No. BC392297 (L.A. Super. Ct.) (average net recovery of approximately $20). Accordingly, the high participation rate, the low number of opt-outs, and no objections by Settlement Class Members supports a finding that the Settlement is fair and reasonable.

## X.    The Proposed PAGA Settlement Is Reasonable

Pursuant to the Settlement Agreement, $50,000.00 of the Gross Settlement Amount will be allocated to the resolution of the PAGA claim, of which 75% ($37,500) will be paid directly to the LWDA, and the remaining 25% ($12,500) will be distributed to PAGA Group Members based on Compensable PAGA Pay Periods.   Settlement Agreement § I (I), (Q), (T), and (Z).  Where PAGA penalties are negotiated in good faith and "there is no indication that [the] amount was the result of self-interest at the expense of other Class Members," such amounts are generally considered reasonable. *Hopson v. Hanesbrands Inc.*, 2009 U.S. Dist. LEXIS 33900, at *24 (N.D. Cal. Apr. 3, 2009); see also *Nordstrom Com. Cases*, 186 Cal. App. 4th 576, 579 (2010) ("[T]rial court did not abuse its discretion in approving a settlement which does not allocate any damages to the PAGA claims.").  The PAGA component of the Settlement is the product of arm's-length negotiations between counsel who are well versed in the intricacies of PAGA litigation and, more importantly, wage and hour employment law.  Kim Decl., ¶¶ 3-8; Han Decl., ¶¶ 3-9.  Class Counsel conducted extensive formal and informal investigation and discovery into the claims at issue and have assessed both the strengths and weaknesses of the claims and the risks of continued litigation.  Kim Decl., ¶¶ 17-19.  The PAGA allocation is sufficient to satisfy the PAGA purposes of punishment and deterrence, possibility that Plaintiffs might not prevail on

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

proving their claims, or that the Court could reduce the PAGA award in its discretion. Kim Decl., ¶ 37. Based on the foregoing, Class Counsel strongly believe that the PAGA component of the Settlement appropriately reflects the relative strengths of the Parties' respective claims and defenses, as well as the substantial risks presented in continuing the litigation. *Id*. Pursuant to Labor Code § 2699 (l)(2), Plaintiffs' Counsel submitted a copy of the Settlement to the LWDA on October 11, 2023. See Exhibit C, Kim Decl., ¶ 22. As such, the Court should approve the PAGA allocation based on the finding that the allocation is the result of good faith, arm's-length negotiation, and therefore fair, adequate, and reasonable.

## XI.    CONCLUSION

Based on all of the foregoing, Plaintiffs respectfully request that the Court grant final approval of the Settlement.

Dated:  April 26, 2024                     **VERUM LAW GROUP, APC**

By:_____/s/ Sam Kim_____
            Sam Kim
            Yoonis Han
            Attorneys for Plaintiffs Rene Longoria
            and Nicolas Merezko

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT